**AETNA CASUALTY AND SURETY COMPANY, Plaintiff,**

**v.**

**OCEAN ACCIDENT & GUARANTEE CORPORATION, Ltd., Defendant.**

**Civ. A. No. 64–1239.**

United States District Court
W. D. Pennsylvania.

Nov. 30, 1966.

Frederick N. Egler, of Egler, McGregor & Reinstadtler, Pittsburgh, Pa., for plaintiff.

James F. Manley, of Burns, Manley & Little, Pittsburgh, Pa., for defendant.

### OPINION AND ORDER

MARSH, District Judge.

In this controversy between two insurance companies, Aetna Casualty and Surety Company (Aetna), plaintiff, seeks to recover from Ocean Accident & Guarantee Corporation, Ltd. (Ocean), defendant, pro rata reimbursement (75%) of a judgment in the sum of $35,000, with interest and costs, which Aetna paid to the Estate of Joseph Nalevanko as insurer of Latrobe Brewing Company (Latrobe). The Administrator of the Nalevanko Estate had been a successful claimant in a Survival Action brought against Latrobe. It was stipulated that the precise amount to be paid to Aetna by Ocean, if liable, is $27,527.70, with interest from August 13, 1963, the date on which Aetna paid the Nalevanko judgment.[1]

Aetna contends that Ocean was also an insurer of Latrobe against the hazard involved in the Nalevanko accident, pursuant to Ocean's policy No. NA88948, and that Ocean is therefore obligated to reimburse Aetna in the stipulated amount. We agree.

A jury trial was demanded by Ocean. Disputed issues of fact were resolved at pretrial conferences by stipulations. After a jury had been selected, counsel agreed, with the approval of the court,

---

1. See Stipulation re Amount of Judgment, filed November 3, 1966, which we shall treat as an amendment to the amounts claimed in the Complaint and specified in pretrial stipulations.

that the jury should be dismissed since all facts relevant to the question of insurance coverage had been established, and that the controversy was for the determination of the court as a matter of law.[2]

The pertinent facts are as follows:

In 1959 Latrobe contracted with Dill Construction Company (Dill), an independent contractor, to remove an ammonia system which was part of the cooling system in use in Latrobe's brewery and replace it with a new cooling system. The ammonia system consisted of pipes of various sizes, condensers in the shape of tanks for collecting ammonia gas, valves which performed various functions in the system, and ammonia gas in the pipes. The removal of the old ammonia system and replacement with a new system was an "operation" or a "structural alteration" in the Latrobe brewery.

Joseph Nalevanko was Dill's foreman. On May 30, 1959, he was injured while engaged in removing the ammonia system, from which injuries he subsequently died.[3]

This operation in which Nalevanko was engaged was being performed for Latrobe, the owner, by Dill, the independent contractor, under the general supervision of Latrobe, and the accident to Nalevanko occurred in the course of such operation.

At the time Nalevanko was injured, he was an employee of Dill and was not working under the control of Latrobe, nor did Latrobe have the right to control him.

On March 24, 1961, the Administrator of Nalevanko's Estate brought wrongful death and survival actions against Latrobe, Dill and Ocean at Civil Action No. 61–177 in this district court. Prior to trial, the Nalevanko actions against Dill and Ocean were dismissed. Subsequently, Dill was brought in as a third-party defendant by Latrobe. At the trial a directed verdict was entered in Dill's favor.

Latrobe's defense of the Nalevanko suit was assumed by Aetna under its comprehensive liability insurance policy with Latrobe. (Plaintiff's Ex. 9.) The bodily injury limits of Aetna's policy were $100,000/$300,000.

The jury found that Latrobe was responsible for Nalevanko's death and returned a verdict in the sum of $35,000 in favor of the Nalevanko Estate and against Latrobe, on which judgment was entered. The judgment, with interest, was paid by Aetna.[4]

At the time of the accident, there was in effect a Manufacturers' and Contractors' Liability policy No. NA88948 issued by Ocean to Dill. Latrobe and Aetna were not aware that the provisions of the Ocean policy purported to cover Latrobe for an accident arising out of the contractor's operations until the fifth day of the Nalevanko trial. Aetna immediately demanded that Ocean defend the action (plaintiff's Ex. 5). Ocean refused.[5]

2. Stipulation of Counsel filed October 19, 1966.

3. See ex parte account of the details of the accident. Transcript of August 29, 1966, p. 15. See also, the Nalevanko Complaint and Pretrial Statement.

4. See Stipulation re Amount of Judgment.

5. It does not appear when Latrobe and Aetna saw and secured a specimen copy of Ocean's policy. At pretrial conference, Aetna marked a specimen copy in evidence as plaintiff's Exhibit 1; it contained Endorsement No. 1. The face sheet was not filled in. (Transcript of August 29, 1966, pp. 2–3.) Exhibit 1 was admitted in evidence. (Transcript of October 19, 1966, p. 14.) The face sheet of the actual policy disclosing the scope of the coverage and the bodily injury limits thereof was not furnished to Aetna's counsel until October 5, 1966. See: Amended Pre-trial Statement of Plaintiff, filed October 11, 1966, and Transcript of October 19, 1966, pp. 9–10. The filled-in face sheet was admitted in evidence as plaintiff's Exhibit 8. (Transcript of October 19, 1966, p. 14.) This face sheet indicated that Latrobe was covered only for Bodily Injury and Property Damage, Division 3—Independ-

Ocean also had issued a separate Workmen's Compensation policy providing coverage for Dill. Ocean admits it received timely notice of the injury to Nalevanko[6] and paid workmen's compensation to him on behalf of his employer, Dill.[7] Ocean also had notice of the suit brought by the Nalevanko Estate, it having been named as a party defendant along with Dill and served with the Complaint. In addition, its insured, Dill, was a third-party defendant throughout the trial. Notwithstanding, Ocean did not voluntarily offer to defend Latrobe. Aetna did not learn that Latrobe was a named insured under the Ocean policy until during the Nalevanko trial in March, 1963. (Plaintiff's Ex. 5; Transcript of August 29, 1966, p. 22.)

The court makes the following conclusions of law:

The court has jurisdiction on the basis of diversity of citizenship and jurisdictional amount. Aetna is a Connecticut corporation, Ocean is an English corporation, and neither has a principal office in Pennsylvania.

The Ocean policy provides coverage as follows:

"COVERAGE A—BODILY INJURY LIABILITY

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined."

"Definition of Hazards

"*   *   *

"DIVISION 3 — INDEPENDENT CONTRACTORS Operations performed for the named insured by independent contractors and general supervision thereof by the named insured, if the accident occurs in the course of such operations, other than (a) maintenance and repairs at premises owned by or rented to the named insured and (b) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures."

Under "Special Endorsement No. 1", which was in effect at the time of the accident, it was provided:

"The name of the Insured   *   *   * is defined to mean any   *   *   * corporation   *   *   * herein referred to as 'owner' who have let work under contract to   *   *   * Dill Construction Co., Inc. to perform   *   *   *.

"In consideration of this agreement, this policy shall cover the liability as therein defined, of said owner in the same manner and to the same extent as though their names were individually expressed as the insured in Item 1 of the Declarations of the policy."

We construe this endorsement to make Latrobe a named insured under Ocean's policy.[8]

Was the accident to Nalevanko a hazard covered by the provisions of Ocean's policy, Coverage A, Division 3? We think the facts disclose that it was.

ent Contractors—and that the liability limits for bodily injury were $300,-000/$500,000. Apparently, Aetna had no knowledge of these policy provisions until October 5, 1966. We treat the Complaint as being amended to claim coverage under Division 3—Independent Contractors—and pro rata reimbursement according to the bodily injury limits of the policies of Aetna and Ocean, respectively. Each policy contained identical "other insurance" provisions. (See f. n. 1, supra.)

6. Transcript of October 19, 1966, p. 4.

7. Ocean, as workmen's compensation carrier for Nalevanko's employer, Dill, was a payee on the draft issued by Aetna to the Nalevanko Estate. (Transcript of August 29, 1966, pp. 16, 17.)

8. Ocean concedes that under Special Endorsement No. 1 Latrobe Brewing Company was made a named insured. (Transcript of November 7, 1966, p. 6.) Page 8 of defendant's brief, received October 17, 1966, admits "Latrobe to be a named insured under   *   *   * [Ocean's] policy."

Ocean agreed to pay on behalf of Latrobe all sums which Latrobe became legally obligated to pay as damages because of bodily injury, including death, sustained by any person "caused by accident" and arising out of operations performed for Latrobe by independent contractor Dill under the general supervision of Latrobe. Nalevanko's accident occurred in the course of such an operation.

Defendant urges that coverage does not extend to Latrobe's activities on its premises but was confined to Dill's operations on the premises. (Transcript of November 7, 1966, p. 7.) It contends that the jury verdict in favor of the Nalevanko Estate was predicated upon Latrobe's negligence, and Dill was exonerated. But the coverage extended by the provisions of Coverage A and Division 3, requiring Ocean to pay Latrobe's legal obligations, is not conditioned upon or limited to the activities or negligence of Latrobe, nor is it limited to accidents caused by acts of Dill.

Obviously, the policy did not extend Coverage A to insure Dill for accidental injury sustained by a Dill employee in the course of his employment, since "any employee of the insured" was specifically excluded from Coverage A (exclusion (k)).[9] It is to be remembered that Nalevanko received workmen's compensation payments from Ocean pursuant to the Workmen's Compensation policy issued to Dill, for which Ocean was reimbursed by the Nalevanko Estate. See footnote 7, supra.

The sole requisite is that there exist a legal obligation of Latrobe *for bodily injury caused by an accident arising out of an operation performed for Latrobe by an independent contractor*. Nalevanko's injury was such an accident. But for the operation conducted on Latrobe's premises by Dill, the independent con-

tractor, the accident to Nalevanko would not have happened. Since Latrobe's legal liability has been established at the 1963 trial, we think that the acts or omissions of Latrobe are irrelevant to the coverage provided. The above quoted provisions of the policy do not contain language which either expressly or by implication injects the causation factor. Cf. General Acc. F. & L. Assur. Corp. v. Continental Cas. Co., 287 F.2d 464 (9th Cir. 1961).

It having been determined that the accident occurred in the course of operations performed for the named insured (Latrobe) by the independent contractor (Dill), it remains to decide whether coverage was excluded by the "other than" clause contained in the definition of hazards. It was agreed that the operation performed by Dill at the Latrobe premises was not maintenance and repair.[10]

Both parties agreed (plaintiff's brief, p. 9; defendant's brief, p. 6) that the term "structural alteration" is accurately defined in Hardware Mut. Casualty Co. v. Hilderbrandt, 119 F.2d 291, 300 (10th Cir. 1941):

"A structural alteration of a building or its equipment is one which affects some portion thereof in a vital and substantial manner, and changes its characteristic appearance. It denotes a change or substitution in a substantial particular."

The old ammonia system was a necessary and important system in the brewery building. If replacing it with a new system was a major "structural alteration" performed by Dill at the premises, *the operation did involve moving a structure*. Thus, this structural alteration was a hazard which was not excluded by the "other than" provisions of the definition. In our opinion, the accident to Nalevanko, occurring in the

9. The stipulation that Nalevanko was not an employee of Latrobe at the time of the accident rendered exclusionary clause (k) inapplicable to Latrobe. Cf. Western Freight Ass'n v. Aetna Casualty & Surety Co., 255 F.Supp. 858, 861, and the

cases cited therein, (W.D.Pa.1966). The court articulated this conclusion at pretrial conference with apparent acquiescence of counsel. (Transcript of October 19, 1966, pp. 6, 18.)

10. Transcript of October 19, 1966, p. 14.

course of such removal, is a covered hazard.

If the operation performed by Dill at Latrobe's premises was not a "structural alteration", it was still a covered hazard within the meaning of the definition.

An appropriate order will be entered in favor of Aetna and against Ocean.