Charles J. Kaspar, Plaintiff-Appellee, v. Clinton-Jackson Corporation, Defendant and Cross-Complainant-Appellant, and C. A. Tharnstrom & Co., Defendant and Cross-Defendant-Appellee.

Gen. No. 53,014.

First District.

December 31, 1969.

Jerome M. Brooks and Gilbert Gordon, of Chicago (Gilbert Gordon, of counsel), for defendant-appellant and defendant-cross-complainant-appellant.

Leonard M. Ring and Earl R. Reynolds, of Chicago (Leonard M. Ring, of counsel), for plaintiff-appellee and separate appellant.

Vogel & Vogel, of Chicago (Leslie H. Vogel and Conrad F. Floeter, of counsel), for defendant and cross-defendant-appellee.

GOLDENHERSH, P. J.

Plaintiff brought an action for personal injuries against defendants, Clinton-Jackson Corporation, hereafter called Clinton-Jackson, and C. A. Tharnstrom & Co., hereafter called Tharnstrom. Clinton-Jackson cross claimed against Tharnstrom for indemnity. The jury returned a verdict in the amount of $400,000 for plaintiff and against Clinton-Jackson, found in Tharnstrom's favor and against plaintiff, and for Tharnstrom and against Clinton-Jackson on its cross complaint. The court entered judgments on the verdicts. Clinton-Jackson appeals from the judgments adverse to it, and plaintiff appeals from the judgment entered in favor of Tharnstrom in plaintiff's action.

On July 14, 1959 Clinton-Jackson, as owner, and Tharnstrom, as contractor, executed a contract in con-

nection with the construction of a building at 550 W. Jackson Boulevard in Chicago. Tharnstrom, as contractor, agreed to supply labor, materials, tools and equipment necessary to complete "the entire Concrete Work including General Conditions." On May 6, 1960, Tharnstrom and six subcontractors were engaged in various parts of the construction work, one of whom was plaintiff's employer, Economy Plumbing & Heating Company.

At this stage of the construction, cement had been poured on the steel deck of the second floor. The west wall of the building backs up to another structure, but the north, east, and south sides of the building were open. The walls were to be of glass and curtain-wall construction. On the east side of the building, for a distance of 24 feet, the second floor was recessed to a depth of 2 feet, 7¼ inches. Draperies extending from the second floor ceiling to the ground floor were to be hung in the recessed space. There was no recess of this type on any other floor.

Plaintiff was putting pipe hangers on the second floor ceiling. He was working alone. The distance from the second floor to the ceiling is 12 feet, 6 inches, and plaintiff was using a movable scaffold, mounted on wheels. Customarily the scaffold is pushed to the area where work is to be done, and in so doing it is necessary to look at the ceiling in order to position the scaffold under the work. The wheels are then locked by means of a lever. Plaintiff was working from north to south on the east side of the building. He has no recollection of what occurred, but a witness working nearby saw the scaffold flying through the air, and saw plaintiff fall to the ground.

Leonard Tharnstrom, president of Tharnstrom, testified that his company employed only two subcontractors; the other contractors were subs for Clinton-Jackson, which acted as its own general contractor. Donald

E. Ruud was superintendent for Clinton-Jackson, and Otto Roos, Tharnstrom's superintendent, received his orders from Ruud.

Mr. Ruud testified he was Clinton-Jackson's representative and performed the same functions as would be performed by the representative of an architect. He coordinated the work of the various contractors, and inspected the work being done.

There is a conflict in the testimony as to whether there were ever, at any time, barricades around the outer perimeter of the building. Thomas Tranchita, superintendent for plaintiff's employer, testified he complained to Roos because no barricades were put up, and thereafter the stairwells were barricaded by Tharnstrom's employees. Leonard Tharnstrom testified his company did not, at any time, erect barricades at the outer perimeters of the building. Mr. Roos testified there were barricades up "during our part of the work."

Mr. Ruud testified that from April 13, 1960, the day Tharnstrom "cleaned the second floor" through May 6, 1960, there were no barricades around the outer perimeter of the building on the second floor. During that period he complained to Roos about barricades for the stairways and elevator shafts but no other complaints "relative to safety." Clinton-Jackson did not build any barricades on the outer perimeter of the building on any floor. Tharnstrom had completed all its work on the second floor except for sweeping out and cleaning up, and a "punch list" about a month before May 6, 1960. A punch list is the list of the items to be corrected.

Clinton-Jackson's first contention is that it "has a clear legal right to judgment" against Tharnstrom in the amount of plaintiff's judgment against Clinton-Jackson. It argues that the contract required Tharnstrom to erect and maintain barricades at all openings and at the

perimeters of the floors, and Tharnstrom failed so to do. In support of its argument Clinton-Jackson cites paragraph 16 of the Building Contract which provides:

> "The parties agree that the work to be done . . . shall be in accordance with the approved plans and specifications . . . and in strict compliance with the rules and regulations, specifications and requirements as may exist at the time of this contract or as may subsequently be required by the City of Chicago, Illinois. . . . It is the intention of this contract that all plans, specifications, rules, regulations and requirements heretofore set forth shall be and are a part of this contract and in the event that same should in any way conflict, the most stringent shall apply.",

the following portion of the "General Conditions":

> "12. LAWS AND ORDINANCES a. '. . . All work shall comply with laws, ordinances, rules and regulations of the State of Illinois, the City of Chicago, and other authorities having jurisdiction.' "

and the Chicago "Safeguards During Construction" Ordinance (sections 76–1 to 76–6.2, Municipal Code of Chicago) which provides in part:

> "Every open sided floor shall be guarded by a standard railing on all open sides. . . ."

Plaintiff's second amended complaint charges Clinton-Jackson and Tharnstrom with violations of the Structural Work Act (c 48, §§ 60–69, Ill Rev Stats), violation of the Chicago Safeguards During Construction Ordinance, and negligence in failing to provide barricades. Clinton-Jackson's cross complaint charges Tharnstrom with active acts or omissions imposing liability on Clinton-Jackson because of its "passive acts," a contractual

indemnity, and also alleges that if plaintiff was injured as alleged "it could only have resulted from a failure on the part of Tharnstrom to perform its work under said agreement in a safe workmanlike and careful manner."

The trial court in its judgment order said:

"This cause having been assigned to this Court for trial, and at the close of all the evidence, the Court having submitted to the jury the issues of the Second Amended Complaint, as amended, and the answers thereto (Count I — Violation of the Structural Work Act; Count II — Violation of the Safeguards During Construction Ordinance; and Count III — Negligence) ; and the issues of the Cross-Complaint of Clinton-Jackson Corporation against C. A. Tharnstrom & Co. and the answer thereto, except the issue of alleged contractual indemnity of Clinton-Jackson Corp. by C. A. Tharnstrom and Co., which said issue this Court held to be a matter of law; and

"The jury having found the issues in the Second Amended Complaint as amended in favor of the Plaintiff and against the Defendant, Clinton-Jackson Corp., and the jury by the said verdict having found the issues against the Plaintiff and in favor of C. A. Tharnstrom and Co., and the jury having returned a verdict in favor of C. A. Tharnstrom and Co. and against Clinton-Jackson Corp. on the issues of the Cross-Complaint except on the issue of indemnity as aforesaid;

"This matter is now before the Court for adjudication of the indemnity issue (Count I) of the Cross-Complaint of Clinton-Jackson Corp. against C. A. Tharnstrom and Co. And the Court having considered and analyzed the several indemnity provisions of the total contract (Plaintiff's Exhibits 1, 2 and

3—in evidence) between Clinton-Jackson Corp. and C. A. Tharnstrom and Co., and having heard arguments of counsel and having considered the authorities cited, the Court finds:

"That under the several indemnity provisions within the said contract, C. A. Tharnstrom and Co. did not indemnify Clinton-Jackson Corp. against its own misconduct (knowing violations of the Structural Work Act and/or the Safeguards During Construction Ordinance) or against its own negligence, but rather indemnified Clinton-Jackson Corp. only for its (C. A. Tharnstrom and Co.'s) own knowing misconduct and/or negligence; and

"The jury having found by its verdicts that Clinton-Jackson Corp. was guilty of knowing Violation of the Structural Work Act and/or Safeguards During Construction Ordinance and/or negligence, and that C. A. Tharnstrom and Co. was not guilty of violations of either the Structural Work Act or the Safeguards During Construction Ordinance or negligence.

"Wherefore, the Court finds the issue of indemnity of Clinton-Jackson Corp. by C. A. Tharnstrom and Co. against Clinton-Jackson Corp. and in favor of C. A. Tharnstrom and Co., and accordingly enters judgment in favor of C. A. Tharnstrom and Co. on the said finding."

■■ In our opinion there is sufficient evidence that Clinton-Jackson was in charge of the work as contemplated by the Structural Work Act, and had "control or supervision" of the building as defined in the Chicago "Safeguards During Construction" Ordinance to support the verdict. The evidence is also sufficient to support the verdict finding Clinton-Jackson negligent.

Clinton-Jackson argues that assuming arguendo the jury verdicts are supported by the evidence, it is en-

titled to indemnity from Tharnstrom by reason of the provisions of paragraph 17 of the "General Conditions" and paragraph 18 of the "Building Contract." These paragraphs provide:

> "17. DAMAGES. a. The contractor undertakes, promises, and agrees that he will protect, defend and hold the Owner free and harmless from any and all claims or actions for injuries or alleged injuries to workmen and the public generally . . . resulting from and in the course of the doing of the work, if caused by the contractor's acts or omissions. . . ."

and

> "18. The Contractor hereby assumes the entire responsibility and liability for any and all injury to or death of any and all persons, including the Contractor's employees, and for any and all damage to property caused by or resulting from or arriving out of any act or omission on the part of the Contractor in connection with this Agreement or for the prosecution of the work hereunder, and the Contractor shall save harmless the Owner from and against any and all loss and/or expense which they or either of them may suffer or pay as a result of claims or suits due to, because of or arising out of any and all such injuries, death, and/or damage, and the Contractor if requested, shall assume and defend, at his own expense, any suit, action or other legal proceeding arising therefrom."

■ We have carefully examined these contractual provisions and find them similar to those construed in Westinghouse Elec. Elevator Co. v. LaSalle Monroe Bldg. Corp., 395 Ill 429, 70 NE2d 604, and Fields v. Lawter Chemicals, Inc., 113 Ill App2d 320, 252 NE2d 120, in that the indemnity is for damages "resulting from or

arriving out of any act or omission on the part of the Contractor." They are therefore, clearly distinguishable from the agreements considered in Spurr v. LaSalle Const. Co., 385 F2d 322, and Patent Scaffolding Co. v. Standard Oil Co., 68 Ill App2d 29, 215 NE2d 1, upon which Clinton-Jackson relies. The trial court correctly held that Tharnstrom did not agree to indemnify Clinton-Jackson against its own misconduct or negligence, and the agreements provide indemnity only for Tharnstrom's misconduct or negligence.

██ ██ Clinton-Jackson next contends the trial court erred in refusing to permit the jury to take to the jury room enlarged, or blownup copies of various portions of the Clinton-Jackson-Tharnstrom contract. Considerable discretion is given the trial court as to the exhibits which may be taken into the jury room, Fahrforth v. Kwiatkowski, 79 Ill App2d 300, 307, 224 NE2d 641. The contract and "General Conditions" are in evidence and were taken to the jury room. The "blowups" were exhibited to the jury during the trial, and we cannot say the trial court abused its discretion.

Clinton-Jackson contends the damages awarded are excessive. The testimony shows plaintiff was 36 years old at the time of the injury. When first seen by Dr. Muehrcke, an internist, he was comatose, suffering from shock due to loss of blood and acute kidney failure. On two occasions he required the use of a kidney machine. He suffered a heart failure. He developed diabetes as the result of an injury to his pancreas. He suffered a traumatic laceration with a transection and fragmentation of the right lobe of the liver. Three ribs were fractured. He suffered a partial paralysis of the left lower leg; he required a tracheotomy; there were several operative procedures, among which were the removal of half of the right lobe of the liver, and his spleen. He was confined to the hospital on a number of occasions and suffers from liver insufficiency, kidney insuffi-

ciency, diabetes, sexual impotency, and orthostatic hypotension. He can stand for only 15 to 20 minutes at a time. He has difficulty in walking and sleeping. His condition is permanent.

His hospital, medical and drug bills to the time of trial totalled almost $30,000. His loss of earnings to the date of trial was $67,348.60. Actuarial testimony shows substantial prospective loss of earnings and the evidence shows a continuing need for medication.

 The courts have repeatedly held that the amount of damages to be assessed is peculiarly a question of fact for the jury, and if the jury is properly instructed on the measure of damages, an appellate court should not substitute its judgment as to the sum to be awarded in a given case, for that of the jury.

Clinton-Jackson requested that the following special interrogatory be given:

> "Do you find from the evidence and under the instructions of the Court that on and prior to May 6, 1960, it was the obligation of C. A. Tharnstrom & Co. to erect a barricade or railing around the exterior of the second floor of the building in question?"

It contends the court erred in refusing its request.

 The rule with respect to special interrogatories is stated in Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717, wherein the Appellate Court, at page 51, said:

> "A special interrogatory is not proper unless it relates to one of the ultimate facts upon which the rights of the parties directly depend and unless the answer responsive thereto would be inconsistent with some general verdict which might be returned upon the issues in the case. Interrogatories which ask

374

for a special finding as to evidentiary facts are never proper, even though ultimate facts may be deduced therefrom by reason or argument. Wicks v. Cuneo-Henneberry Co., 319 Ill 344, 349, 350; King v. Ryman, 5 Ill App2d 484, 125 NE2d 840; Chicago & N. W. Ry. Co. v. Dunleavy, 129 Ill 132, 141, 148; C. & A. R. R. Co. v. Gore, 202 Ill 188, 193, 194; Packard v. Kennedy, 4 Ill App2d 177, 186; Stevenson v. Byrne, 3 Ill App2d 43, 48.

"A special interrogatory must stand alone unaided by any presumptions or evidence in its favor. The court cannot look to the evidence to determine the propriety of a special interrogatory or whether or not an answer thereto was or would be inconsistent with a general verdict. Wicks v. Cuneo-Henneberry Co., supra; Chicago & N. W. Ry. Co. v. Dunleavy, supra."

▮▮▮ An affirmative answer to the special interrogatory would not be inconsistent with the general verdict and the court properly refused the request.

▮▮▮ We have considered plaintiff's cross appeal with respect to the judgment entered in favor of Tharnstrom. What we have previously said with respect to the evidence of violation of the Structural Work Act, the "Safeguards During Construction Ordinance" and negligence is here applicable. The evidence is sufficient to support the verdict finding in Tharnstrom's favor and there is no basis for entry of judgment in favor of plaintiff and against Tharnstrom.

For the reasons set forth the judgments of the Circuit Court of Cook County are affirmed.

Judgments affirmed.

McNAMARA and EBERSPACHER, JJ., concur.