CONSOLIDATION COAL COMPANY, INC., Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant.

Civ. A. No. 72–599.

United States District Court, W. D. Pennsylvania.

Jan. 12, 1976.

James E. Coyne, Pittsburgh, Pa., for plaintiff.

Clem R. Kyle, Pittsburgh, Pa., for defendant.

## OPINION

SCALERA, District Judge.

In this non-jury case in which this court's diversity jurisdiction is invoked, the parties have stipulated the facts. There are two issues:

(1) whether plaintiff, Consolidation Coal Company, Inc., is entitled to coverage under the policy of insurance issued by defendant, Liberty Mutual Insurance Company, to Long's Hauling Company for the loss sustained by plaintiff in the settlement of the claim filed by Long's employee, Mazjer, in the Court of Common Pleas of Allegheny County, Pennsylvania; and

(2) whether Liberty may recover from Consolidation [or its insurer, the Hartford Insurance Group] the $3,402.18 of workmen's compensation benefits which defendant Liberty was obligated to pay to Mazjer under the provisions of Pennsylvania's Workmen's Compensation Act, 77 P.S. § 1 *et seq.*

I

The plaintiff is a citizen of Pennsylvania, having its principal place of business in Pittsburgh. Defendant is a citizen of the Commonwealth of Massachusetts and authorized to do business in Pennsylvania. Consolidation seeks recovery of $10,750 from Liberty, while Liberty has counterclaimed for $3,402.18.

By a contract dated April 30, 1965, Long agreed to haul coal, coke, and coal fuel products for Consolidation. Under paragraph 5[1] of the contract, Long agreed *inter alia* to indemnify and protect harmless Consolidation against all claims, liabilities, loss and suits caused by, or in any manner resulting from the actions of Long or his agents and/or employees.

On November 20, 1968 at approximately 6:30 a. m., Raymond Mazjer, an employee of Long, while in the course of employment, drove a Long truck onto the premises of Consolidation and was crossing railroad tracks. He jumped from the truck just before it was struck by a railroad car owned by and in the possession and control of Consolidation's employees, who were also in the course of employment.

Mazjer filed suit against Consolidation at No. 1691 January Term, 1971 in the Court of Common Pleas of Allegheny County, Pennsylvania, for damages for injuries sustained in the accident, claiming that the negligence of Consolidation's employees was the sole and proximate cause of the accident. Hartford, Consolidation's general liability insurer, defended Consolidation against Mazjer's claim.

Liberty had issued a comprehensive general liability policy covering Long for the period from February 5, 1968 to February 5, 1969. This policy was in full force during the time of Mazjer's accident. In an endorsement to the policy,[2] Consolidation was added as "an additional insured," conditioned by the following language: "but only with respect to acts or omissions of the named insured in connection with the named insured's operations" on Consolidation's premises.

Hartford, as Consolidation's insurer, by letter dated July 20, 1970, called upon Liberty to defend the state lawsuit and to provide coverage for Consolidation, as an additional insured under Liberty's policy. Hartford further demanded that Liberty should indemnify Consolidation for any sums it may become obligated to pay to Mazjer. Liberty refused to comply.

Several months later, on or about November 20, 1970, Hartford settled and paid Mazjer's claim out of court for the sum of $19,500, which amount the parties have stipulated was a fair, reasonable and proper settlement.

Consolidation originally demanded in its complaint full indemnification from Liberty for the total amount of the settlement. The parties now agree that even if Liberty's policy with Long covers Consolidation's acts and omissions in the case *sub judice,* because of the applicable "Other Insurance" provisions of both the Hartford policy issued to Consolidation and the Liberty policy issued to Long, Hartford and Liberty would share the loss equally. Therefore, the maximum

---

1. ". . . [I]t is mutually understood and agreed upon . . ."

 5. That Carrier agrees to keep in force such permits and insurance as prescribed by law and/or the Interstate Commerce Commission, to indemnify and protect harmless Shipper against all claims, liabilities, loss and suits caused by, or in any manner resulting from, the actions of Carrier, or his agents and/or employees."

2. The endorsement provides:

 ADDITIONAL INSURED
 (Named Insured's Operations)
 It is agreed that the "Persons Insured" provision is amended to include as an insured the person or organizations named below, but only with respect to acts or omissions of the named insured in connection with the named insured's operations at the applicable location designated below.

 Name of Persons or Organization Applicable Location
 Consolidation Coal Company _____

amount which Consolidation could be awarded is $10,750.

## II

Consolidation argues that coverage under the endorsement is not predicated upon Long causing the Mazjer accident and proposes that the language of the endorsement covers the circumstances of Mazjer's accident because "but for" Mazjer's act of driving the truck across the tracks, the accident would not have occurred. Consolidation notes that because the language of the endorsement gives it coverage "with respect to acts or omissions of the named insured in connection with the named insured's operations" at Consolidation's premises, the fact that Long's acts or omissions were not the proximate cause of Mazjer's injuries is of no moment.

Liberty maintains that the intent and plain meaning of the words "acts or omissions of the named insured" used in the additional insured endorsement is to restrict coverage to those accidents caused by the negligence of Long while acting pursuant to its contract with Consolidation. Defendant argues that the words "acts or omissions" inject a causation factor into the endorsement. Liberty argues that the only reasonable interpretation of the additional insured endorsement, when read in conjunction with the indemnity clause[3] contained in the contract, is that Long agreed to indemnify Consolidation against liability sustained by Consolidation only as a result of the negligence of Long or its employees in performance of the contract. Consolidation contends that the language of the basic contract between Long and Consolidation is irrelevant to the issue of whether the endorsement provides coverage to Consolidation.

## III

The court must first determine whether the language used in the en-dorsement is clear and unambiguous. It has been said that a provision of an insurance policy is to be considered ambiguous if intelligent men on considering it in the context of the entire policy would honestly differ as to its precise meaning and if alternative or more explicit language, if used, would have put the meaning of the language beyond reasonable question. *Celley v. Mutual Benefit & Health Accident Ass'n,* 229 Pa.Super. 475, 324 A.2d 430, 434 (1972). The parties, of course, differ in their understanding of the meaning of the disputed clause. Neither party contends that the disputed language of the endorsement is precise.

Similar language has often been the subject of litigation in which the courts have found the meaning of the language to be ambiguous. *Aetna Casualty & Surety Co. v. Ocean Accident & Guar. Corp.,* 261 F.Supp. 223 (W.D.Pa.1966), aff'd, 386 F.2d 413 (3d Cir. 1967); *General Acc. F. & L. Assur. Corp. v. Continental Cas. Co.,* 287 F.2d 464 (9th Cir. 1961); *Manufacturer's Cas. Ins. Co. v. Goodville Mut. Cas. Co.,* 403 Pa. 603, 170 A.2d 571 (1961).

The court concludes that the phrase "but only with respect to the acts or omissions" used in the endorsement to the insurance policy is ambiguous.

## IV

Consolidation contends that the ambiguous language of the endorsement should be subject to the rule of construction which provides that ambiguities in an insurance policy will be construed against the drafting party and in favor of the insured. *In re F. H. McGraw & Co.,* 473 F.2d 465 (3d Cir.), *cert. denied,* 414 U.S. 1022, 94 S.Ct. 443, 38 L.Ed.2d 312 (1973); *Hodgins v. American Mut. Liability Ins. Co.,* 261 F.Supp. 129 (E.D. Pa.1966); *Sykes v. Nationwide Mut. Ins. Co.,* 413 Pa. 640, 198 A.2d 844 (1964).

---

**3.** Paragraph 5 in the contract, written by Consolidation, obligates Long to indemnify Long only for claims or losses "caused by" or "re-sulting from" the actions of Long or its agents or employees. See note 1 for the complete wording of the clause.

However, before adopting Consolidation's contention, the court must first attempt from an examination of the facts to determine the intent of the parties and the meaning of the endorsement.

As Judge Lord noted:

"We feel compelled to comment upon what at first blush appears to be a conflict between a procedural imperative and the widely-held doctrine of construing insurance policy ambiguities against the insurer. If we were to hold that the mere existence of a judicially determined ambiguity demands judgment against the insurer, we would be ignoring completely the rationale for the rule of construction. Insurance policies and other contracts of adhesion are construed strictly and against their author when there is doubt as to what the parties themselves intended. *Bergholm v. Peoria Life Ins. Co.*, 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416 (1931); *Liberty Mutual Insurance Co. v. Hercules Powder Company*, 224 F.2d 293, 54 A.L.R.2d 513 (3d Cir. 1955). However, this construction can only be invoked when, upon a full consideration of the facts, the intent of the parties is still obscure. Only then, should we place the consequences of the ambiguity upon the party who chose the words." (footnote omitted) *Hodgins v. American Mutual Liability Insurance*, 261 F.Supp. 129, 130–131 (E.D.Pa.1966).

V

The language of the endorsement reads:

"It is agreed that the 'Persons Insured' provision is amended to include as an insured the person or organization named below, but only with respect to acts or omissions of the named insured in connection with the named insured's operations at the applicable location designated below."

Plaintiff contends that the language above is substantially similar to the language discussed in *Manufacturer's Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, supra;[4] *Aetna Cas. & Sur. Co. v. Ocean Accident & Guar. Corp.*, supra,[5] and *General Acc. F. & L. Corp. v. Continental*

---

4. In *Manufacturer's Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, supra, the litigated language contained the words "arising out of" as part of the phrase "caused by accident and arising out of the ownership, maintenance or use" of an insured trailer. The owner of the trailer had loaned the trailer to another, Stoltzfus, who attached it to a truck which Stoltzfus had rented from a third party. The trailer and the truck were covered by liability insurance issued by different insurers. While Stoltzfus' employee was driving the truck with the trailer attached, he lost control and collided with another car. The accident was apparently in no way caused by the use of the trailer. Nevertheless, the court, concluding that the phrase in the policy was ambiguous, construed it strictly against the insurer, and noted that the words "arising out of" signified a causal connection requirement, i. e., a "but for" causation requirement and were not to be equated with the words "proximately caused by." Under such a test, the court reasoned in *Goodville* that but for the fact of the trailer being so used on this occasion, the other driver's automobile would not have collided with it.

5. In the *Aetna* case, supra, Aetna, the liability insurer of the Latrobe Brewing Company, sought to recover from Ocean, the general liability insurer of Dill Construction Company, reimbursement of a judgment which Aetna (as Latrobe's insurer) had become obligated to pay to the estate of Nalevanko, an employee of Dill. Latrobe had contracted with Dill to remove an ammonia system which was part of the brewery's cooling system and replace it with a new cooling system. In the course of performing the contract, Nalevanko, Dill's foreman, was fatally injured as a result of the negligence of Latrobe. The estate of Nalevanko recovered a jury verdict from Aetna, which had assumed Latrobe's defense. During the trial, Ocean refused Aetna's demand to defend this lawsuit. Thereafter, Aetna filed suit against Ocean, alleging that the provisions of the Dill-Ocean policy covered Aetna's losses in paying the judgment. Before Judge Marsh, Ocean conceded that Latrobe (Aetna's insured) was a named insured pursuant to the endorsement added to Dill's policy. It should be further noted that the Dill policy declared that Latrobe was a named insured "in the same manner and to the same extent" as Dill. The only restriction on the coverage provided to Latrobe by the Dill policy was that losses incurred by Latrobe arise "out of the hazards," which "hazards" were defined in the policy. The major question before the district court in *Aetna* was not the scope of the "arising out

*Cas. Co., supra,*[6] and that the endorsement should be interpreted in a similar fashion.

Thus, plaintiff argues that this endorsement falls within that class of cases which have construed the words "arising out of" to mean causally connected with, not proximately caused by. In these cases, "but for" causation, i. e., a cause and result relationship, has been concluded to be sufficient to satisfy the "arising out of" language.

Although the policy language construed in the *Goodville, Aetna, General Acc.,* and *Chesapeake & P. Tel. Co.* cases is similar to the language used in this case, the court concludes that none of the cases cited compels the conclusion the plaintiff advances. These cases, with minor variations, construed "arising out of" language. The language of the disputed endorsement in this case includes the phrase "but only with respect

to the acts or omissions of the named insured." No similar qualifying phrase modified the pertinent language in the cases cited.

There is an additional distinction between this case and the *Aetna* case. In *Aetna,* the policy was written to provide coverage to the additional insured "in the same manner and to the same extent as though their names were individually expressed" as insureds in the declarations of the policy. No qualification of any kind can be understood from such language. In the case *sub judice,* the endorsement contains a qualifying phrase.

■ To accept the position advanced by plaintiff would require the court in effect to delete the qualifying phrase from the endorsement. If this is done, the language of the case would indeed be similar to the language of *Goodville, Aetna, Chesapeake & P. Tel. Co.,* or *Gen-*

---

of" language. In *Aetna,* it was not seriously disputed that the broadly worded policy language did not condition coverage to Latrobe to only those losses which were proximately caused by Dill. Rather, once the court determined that the Dill policy was satisfied by the "but for" test—causal connection test—it then proceeded to decide the more difficult issue—the applicability of the exclusionary clause in the definition of hazards to the facts of the case.

On appeal, the Court of Appeals, while affirming, reached a different conclusion as to the application of the exclusionary language in the definition of hazards.

6. In *General Accident, supra,* the facts of the lawsuit were similar to the case *sub judice.* A lumbering company contracted with Austin Company for the construction of a building on the lumber company's premises. In connection with this contract, Austin obtained general liability insurance from defendant General. In this policy, the lumber company was named as an additional insured to the extent that the lumber company's liability arose out of "operations of the Austin Company." During the course of the contract, an employee of the contractor was killed when he was struck by a crane being operated by one of the lumber company's employees. The wife of the deceased employee filed a lawsuit against the lumber company, which was defended by its insurer, Continental. Continental, pursuant to the additional insured endorsement of General's policy issued to Austin, demanded that

General defend the suit and accept coverage. General refused. Thereafter, Continental negotiated an out-of-court settlement of the widow's claim. Continental then sued General, asserting that the additional insured endorsement of Austin's policy provided coverage to Continental. The Court of Appeals for the Ninth Circuit, in affirming the district court, concluded that to restrict coverage "to the operations of the Austin Company" was not the equivalent of restricting coverage to those accidents proximately or directly caused by the Austin Company. The policy language was construed not to either impliedly or expressly inject a causation factor, and therefore as long as the "but for" test was satisfied, coverage was required.

In addition to the three cases cited by plaintiff, the case of *Chesapeake & P. Tel. Co. of Md. v. Allegheny Const. Co.,* 340 F.Supp. 734 (D.Md. 1972), involves the application of Pennsylvania law to an insurance policy containing similar language. The pertinent language of the telephone company's liability policy provided coverage for "bodily injury . . . caused by accident and arising out of the hazards" defined by the policy. The policy defined hazards, *inter alia,* as "operations performed for the named insured [the telephone company] by independent contractors [Allegheny Construction Co]. . . ." The court concluded that such language extended coverage to all operations of the independent contractor which satisfied a "but for" causal connection test regardless of whether those operations constituted the proximate cause of the accident.

*eral* to the extent those cases involved essentially the language "arising out of the operation or use of." But to construe the qualifying phrase without effect would violate the rule of contract construction that "an interpretation which gives effect and meaning to a term is preferred over one which makes such term surplusage or without effect." *Rossville Salvage Corp. v. S. E. Graham Co.,* 319 F.2d 391, 395 (3d Cir. 1963); *Accord, United Aircraft Corp. v. Boreen,* 284 F.Supp. 428 (E.D.Pa.), *aff'd,* 413 F.2d 694 (3d Cir. 1968); *Morrison-Knudsen Co. v. United States,* 397 F.2d 826, 184 Ct.Cl. 661 (1968). Thus, if it is possible to give some meaning to the phrase "but only with respect to the acts or omissions" of Long, such a construction is to be preferred.

## VI

There are several cases which have interpreted the meaning of the words "acts or omissions" under circumstances similar to the circumstances of this case. In *Kaspar v. Clinton-Jackson Corp.,* 118 Ill.App.2d 364, 254 N.E.2d 826 (1969),[7] the indemnity provision of the contract provided that the contractor would assume liability for any and all injury "caused by or resulting from or arriving

out of any act or omission on the part of the Contractor." Similarly, in *Bankhead Welding Service, Inc. v. Florida E. C. Railroad Co.,* 240 So.2d 648[8] (Fla.App. 1970), the contractor agreed to indemnify the railroad from "and against all losses and all claims . . . and judgments . . . , by reason of any act or omission of the said Contractor . . ." In both of these cases, the words "acts or omissions" were construed as not providing coverage to the owner when his liability was occasioned by his own negligence. The courts interpreted the words "acts or omissions" in these cases to mean that unless the negligent acts or omissions of the contractor caused the liability visited upon the owner, the owner could not be indemnified.

A similar interpretation was given to similar words in *Schwartz v. Merola Bros. Constr. Corp.,* 290 N.Y. 145, 48 N.E.2d 299 (1943).[9] The court construed a contractual provision which indemnified the owner against loss "due to any act or omission of the Contractor" as not being sufficiently broad to require indemnification where the owner's liability resulted from its own negligence.

■ The effect of the words "acts or omissions" and the accompanying language of the cases was to qualify the

---

7. Clinton-Jackson contracted with Thurnstrom, the general contractor, for the construction of a building. A subcontractor's employee was injured. In the personal injury suit filed by the employee against the owner, Clinton-Jackson, and the general contractor, the jury found that the owner's violations of certain statutes and/or negligence had caused the injuries, and that the general contractor was not guilty of any violations or negligence. The owner predicated his cross-claim against the contractor on the basis of the indemnity provision in their contract. The trial court denied his claim. On appeal, the appellate court affirmed and cited two cases, *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.,* 395 Ill. 429, 70 N.E.2d 604, and *Fields v. Lawter Chemicals, Inc.,* 113 Ill.App.2d 320, 252 N.E.2d 120, in support of its holding that a contract providing indemnification for damages "resulting from or arriving out of any act or omission on the part of the Contractor" does not indemnify the owner against its own negligence, but rather provides indemnity coverage only for liability occasioned by the contractor's negligence.

8. Bankhead contracted to repair and maintain the railroad's property. A railroad employee was injured. The employee filed a lawsuit under the Federal Employees Liability Act. The jury's verdict established that the railroad's failure to provide the employee a safe place to work had caused his injuries. The trial court granted the railroad judgment on its third-party complaint against Bankhead for the amount of the verdict on the basis of the indemnification agreement between the railroad and Bankhead. The appellate court reversed this finding, holding that there was no clear and unequivocal language in the indemnity provision of the contract which required Bankhead to indemnify the railroad against its own negligence.

9. This case is distinguishable from this case in that the jury found that all the defendants (owner, general contractor and the subcontractors) were guilty of negligence. However, the indemnity clause language of the case is sufficiently similar to the ambiguous phrase of the endorsement of this case to be helpful.

extent of the coverage provided. Similarly, the use of the words "but only" with respect, etc., in the endorsement in this case appears to be an attempt by defendant to qualify the extent to which plaintiff is an additional insured under the policy. The similarities between the above-cited cases and the case *sub judice* coupled with the rule of contract construction that prefers giving meaning to the language cut strongly against construing the endorsement in the manner proposed by plaintiff. It is reasonable to conclude that the most appropriate construction of the subject phrase is that Consolidation was to be an additional insured under the defendant's policy only when the negligent acts or omissions of Long directly caused Consolidation's loss.

## VII

The court notes that *Bankhead* and *Kaspar* do differ from this case in that they involved the interpretation of the provisions of the indemnity contract between an owner and a general contractor, while in this lawsuit, the owner is attempting to recover on the basis of an endorsement to the contractor's liability insurance policy. *Bankhead* and *Kaspar* represent a uniform body of law that requires that an indemnity provision be construed strictly against providing indemnification to the indemnitee for his own negligence. *United States v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); Indemnity, 41 Am. Jur.2d § 15; Indemnity-Contractor's Liability, 27 A.L.R.3d 663.

■ In this case, Liberty has argued that the endorsement must be considered in conjunction with the indemnity provision of the April 30, 1965 contract. The language of the indemnity provision of that contract would be construed strictly against liability because of the rule of law that a contract that indemnifies the indemnitee against the consequences of

its own negligence must be clear and unequivocable. *Westinghouse Electric Corp. v. G. C. Murphy Co.,* 425 Pa. 166, 228 A.2d 656 (1967); *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc.,* 404 Pa. 53, 171 A.2d 185 (1961).

In *United States v. Seckinger, supra,* 397 U.S. at 211, 90 S.Ct. at 885, the court stated that "a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties. This principle, though variously articulated, is accepted with virtual unanimity among American jurisdictions."

■ While there is Pennsylvania authority that a private party may validly contract to relieve himself from liability for the consequences of his own negligent act, *Siegel Co. v. Philadelphia Record,* 348 Pa. 245, 35 A.2d 408 (1944); *Cannon v. Bresch,* 307 Pa. 31, 160 A. 595 (1932), the intention to indemnify one's self against liability for one's own negligence must be clearly and unequivocally expressed. *Perry v. Payne,* 217 Pa. 252, 66 A. 553, 11 L.R.A.,N.S. 1173 (1907); *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc., supra.*

Pennsylvania courts have refused to enforce indemnity clauses where their purported intention to insulate the indemnitee from liability for the consequences of his own negligence was expressed in words of general import, such as imposing an obligation to indemnify for all liability or all losses. *Perry v. Payne, supra; Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc., supra.* Only where the contract provisions explicitly refer to losses arising from the negligence of the indemnitee has such indemnification been permitted. *Westinghouse Electric Corp. v. G. C. Murphy Co., supra ;* [10] *Jamison v. Ellwood Con-*

---

10. The pertinent provision provided that: "Seller [the independent contractor] shall . . . indemnify and save harmless the Buyer [Westinghouse] against any and all

claims, demands, actions, courses of action, suits, . . . whether the same results from negligence of Buyer or Buyer's employees or otherwise . . . ." 228 A.2d at 658.

*solidated Water Co.,* 420 F.2d 787 (3d Cir. 1970).[11]

 It is apparent that the language of the indemnity provision in the basic contract in this case does not satisfy the standard required by the above cases, and therefore it could not be construed to require Long to indemnify Consolidation for loss due to Consolidation's negligence.

### VIII

Thus, by operation of law, the indemnity provision of the basic contract would be strictly construed against indemnifying Consolidation for its own negligence. The question arises whether this principle of strict construction should also apply to the court's construction of the endorsement since to construe it in the manner proposed by Consolidation would, in effect, indemnify it for liability occasioned by its own negligence. Different considerations may be appropriate in constructing an indemnity provision which makes the contractor bear the burden of indemnifying the indemnitee for the latter's negligence and a provision that requires this risk to be shifted to the contractor's liability insurer.

The evidence indicates that it may be reasonably inferred that the endorsement was obtained to comply with the requirement of the indemnity clause of the basic contract. On April 30, 1965, Long signed the hauling contract given it by Consolidation. The record also reveals that defendant's liability policy covering Long was in effect as of February 5, 1968 for a period of one year. The Mazjer accident occurred on November 20, 1968. The record does not indicate on what date Long requested the additional insured endorsement from de-fendant. The record does indicate that the defendant Liberty issued a certificate of insurance on February 12, 1970 to Long "in compliance" with the endorsement. Of' course, the date of issuance of this certificate is over two months after the date of the accident. Despite the lateness of the issuance of this certificate, there is no dispute that the endorsement was in effect on the date of the accident, even though the certificate had not yet been issued to Long.

### IX

On balance, the court concludes that the endorsement does not provide coverage to the plaintiff under the facts of this case. Primarily, the court is moved to this conclusion by the interpretation given the words "acts or omissions" in the cited cases. The language utilized in those cases is similar to that used in the endorsement in this case. To interpret the endorsement in the manner proposed by plaintiff would require the court to ignore the "but only" phrase and treat the endorsement as falling within the "arising out of" language of the cases cited by plaintiff. This would be an inappropriate construction. The most likely meaning of the subject phrase is that it attempts to limit coverage to those instances where the acts or omissions— the negligence—of Long leads to Consolidation's liability.

Secondly, the court concludes that it may be inferred that the additional insured endorsement was intended to provide plaintiff with the coverage required by the indemnity provision of the basic contract. Although this conclusion is a close one, the court is convinced that the inference is a reasonable one under the evidence.

11. The pertinent language: "Contractor agrees to indemnify, hold harmless and defend the Water Company from and against any and all liability for loss, damage or expense . . . for' which the Water Company may be held liable by reason of injury (including death) to any person or damage to any property arising out of or. in any manner connected with the operations to be performed under this contract whether or not due in whole or in part to any act, omission, or negligence of the Water Company or any of its representatives or employees." 420 F.2d at 788.

## X

In addition to suing Consolidation, Mazjer filed a claim under the Workmen's Compensation Act of Pennsylvania against his employer, Long, and Long's workmen's compensation insurer, Liberty. It is undisputed that Mazjer was injured while working within the scope of his employment. He therefore was entitled to workmen's compensation benefits in the total amount of $3,402.18, which Liberty paid to him.

Liberty claims that it is subrogated to the right of Mazjer under 77 P.S. § 671[12] and is entitled to recover from Consolidation or its insurer to the extent it paid workmen's compensation benefits to Mazjer. Liberty contends that Hartford's communication to Liberty was a promise to protect Liberty's subrogation interest. Consolidation, for itself and on behalf of its insurer, Hartford, denies making a promise to Liberty, and suggests that Liberty "slept on their rights" and cannot now complain of its lack of diligence.

Both parties cite *Travelers Ins. Co. v. Hartford Accident & Indem. Co.*, 222 Pa. Super. 546, 294 A.2d 913 (1972),[13] as outlining the law applicable to this case. In *Travelers*, the court stated that "reasonable diligence" must be exercised by the subrogee to protect its subrogation interest. The court noted that in Pennsylvania, "reasonable diligence" requires more than mere notice to the third-party tortfeasor and less than actual intervention in the lawsuit against the tortfeasor in order to protect the subrogee's claim. The court noted that in subrogation disputes, the court must inquire into the actions of the parties and the custom within the insurance industry to determine if promissory estoppel is applicable to the case.

Three letters were written by the parties about the subrogation issue. In a letter dated January 10, 1969, Liberty advised Consolidation that it was the workmen's compensation carrier for Long. In the second paragraph of the letter, Liberty requested that Consolidation not discuss settlement with Mazjer without first notifying it, and that the letter be forwarded to Hartford in order that Hartford might contact Liberty if additional information was needed on Mazjer's case.

On October 24, 1969, Hartford sent a letter to Liberty in which it acknowledged Liberty's letter. Hartford requested Liberty's records of medical reports and itemized bills, and the record of compensation payments in order that Hartford could attempt to work out a settlement of Mazjer's lawsuit.

Liberty, in a letter dated October 30, 1969, complied with Hartford's request by sending a copy of the information requested in the previous letter. Liberty's letter makes no reference to Hartford's proposal to settle Mazjer's lawsuit.

Over two and one-half years elapsed before Liberty and Hartford again corresponded over the subrogation issue. In a letter dated June 21, 1972, Liberty, aware of Hartford's settlement with Mazjer, demanded reimbursement from Hartford for its workmen's compensation payments to Mazjer, or an explanation as to why its subrogation lien was unpaid. On July 19, 1972, Hartford, by letter, denied Liberty's subrogation claim and indicated that Consolidation would file suit seeking coverage under Liberty's policy to Long for the Mazjer claim.

---

12. 77 P.S. § 671 provides in pertinent part: "Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, . . . against such third party to the extent of the compensation payable under this article by the employer; . . . ."

13. The *Travelers* case actually turned on the proposition that in Pennsylvania, a subrogee must prove the negligence of the third-party tortfeasor. The stipulation in this case states that the Mazjer-Consolidation settlement was fair and reasonable in light of the "alleged negligent actions of Consolidation." Thus, there is no question about negligence in this case.

■ According to *Travelers,* mere notice of the subrogation interest is not enough to protect such interest. Liberty's first letter to Consolidation only gives notice of its subrogation interest. The only action taken by Liberty on its subrogation interest beyond the giving of notice was to provide medical records and other information of Mazjer's compensation benefits to Hartford. There is no evidence in the series of letters of a promise or of representations amounting to a promise.

■ In its brief, Liberty characterizes the three letters as being the usual custom of the insurance industry and sufficient to give rise to the application of the promissory estoppel doctrine. Unfortunately, Liberty has not presented evidence in this case of the custom of the insurance industry. Statements made by counsel in briefs, even if accurate, are not part of the record and cannot be treated as such unless stipulated to or unless they are matters of public record. *Kauffman v. Johnston,* 454 F.2d 264, 266 (3d Cir. 1972).

Recovery on the counterclaim will be disallowed.