**DILLON COMPANIES, INC., and John K. Parker, Plaintiffs,**

v.

**ROYAL INDEMNITY COMPANY d/b/a/ Royal & Sunalliance, Defendants.**

No. 03–1366–DWB.

United States District Court, D. Kansas.

April 8, 2005.

Jacob S. Graybill, N. Russell Hazlewood, Wichita, KS, for Plaintiffs.

Christopher J. Carpenter, David R. Buchanan, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

BOSTWICK, United States Magistrate Judge.

The Court now considers Defendant's and Plaintiffs' cross motions for partial summary judgment. This is an insurance coverage case where the parties have consented to trial before a magistrate judge pursuant to 18 U.S.C. § 636(c)(1). (Doc. 13.) Defendant filed its Motion for Partial Summary Judgment, seeking favorable disposition of the issue of its duty to indemnify Plaintiffs, and reserving for trial the issue of its duty to defend Plaintiffs in the underlying case. (Doc. 34.) Plaintiffs filed a Response in Opposition to Defendant's Motion for Partial Summary Judgment (Doc. 43) and a Cross–Motion for Summary Judgment (Doc. 44), seeking disposition of the issues of the duty to indemnify and the duty to defend Plaintiff Dillon Companies, Inc. (Dillons) and a finding that the settlement between Dillons and Plaintiff John Parker was reasonable in amount, made in good faith, and free from collusion. Defendant filed a combined reply and a response to Plaintiffs cross-motion (Doc. 53), and Plaintiffs filed a reply to Defendant's response to the Cross–Motion for Summary Judgment. (Doc. 56.) The parties jointly requested oral argument on the motions for summary judgment, which was scheduled for March 31, 2005. (Doc. 59.) The Court has reviewed the parties' briefs, affidavits, and exhibits, has heard oral argument, and is now prepared to rule. For the reasons set forth below, the Defendant's motion is DENIED and Plaintiffs' motion is GRANTED.

The Court also takes this opportunity to rule upon the discoverability of documents produced by Royal for *in camera* inspection pursuant to the Court's ruling of January 12, 2005 (Doc. 57.) Plaintiffs' Motion to Compel (Doc. 38) is DENIED.

## UNCONTROVERTED FACTS

On April 24, 1999, Professional Services Inc. ("PSI") furnished 19 year-old employee Lance Stinson to provide guard duties to a Dillons store in Wichita, Kansas (Doc. 53, ¶ 30) pursuant to a Master Security Labor Agreement ("MSLA") between PSI and Dillons (Doc. 43, Ex. 2). The MSLA required guards to "work in strict accordance with the JSO's [Job Site Orders] that pertain to each specific [store]." (Doc. 43, Ex. 2 § 3.5.) The relevant JSO's provided that the guard's primary duties included patrolling the store and keeping "store employees advised of strange/ suspicious acting person(s)." (Doc. 43, Ex. 1 ¶ IV.A.)

At about 9:45 p.m., Stinson saw two men walk into the store. (Doc. 43, Ex. 4 at 311:3–7.) He watched them walk to the meat aisle and he proceeded to make a round of the store. On a second round of the store, he did not see the two men, so he walked to the front of the store to see if they were leaving. (Doc. 53 ¶ 32, 33.) Not seeing them, Stinson walked to the back of the store, where he noticed the two men in an employee-only area. (Doc. 53, ¶ 33.) Without notifying anyone,[1] Stinson

___

1. Royal attempts to controvert Plaintiffs' as- sertion that Stinson did not notify anyone of

proceeded toward the men to inquire about their presence in the restricted area. (Doc. 43, Ex. 4 at 313:20–23.) As he walked, two other men attacked Stinson from behind and forced him, at gunpoint, to go to the men's restroom and remove his clothes. (Doc. 53, ¶ 43.)

With Stinson in the restroom, the four men attempted to carry out a robbery of the store. (Doc. 53, ¶ 34.) They gathered the other employees and required one employee to assist them in opening the time-lock safe. (Doc. 43, Ex. 4 at 321–22.) About thirty minutes after the beginning of the robbery, John Parker inadvertently interrupted the robbery when he entered the store to purchase some groceries. (Doc. 43, Ex. 23 at 64:18–25; Doc. 43, Ex. 4 at 311:3–7, 323:1.)

One of the robbers posed as a Dillons employee and attempted to get Parker to walk to the back of the store with him. (Doc. 53, ¶ 36.) While following the robber, Parker was attacked by some of the other robbers. (Doc. 53, ¶ 36–37.) During a lengthy altercation, Parker was severely beaten and shot. (Doc. 43, Ex. 23 at 77:12–84:5.) However, Parker managed to escape and the robbers fled the scene. (Doc. 43, Ex. 23 at 84:22–85:23.)

After the altercation between Parker and the robbers (which Stinson heard from the restroom), Stinson dressed himself and went to the meat room to call 911. During that call, Stinson heard more people in the store. (Doc. 43, Ex. 4 at 323:8–324:5.) When he walked out of the meat room, he was met by Wichita Police officers. (Doc. 43, Ex. 4 at 324:6–324:24.) The record is unclear as to when the first 911 call was made or who made it.

At the time of the robbery, Dillons was an additional named insured on PSI's Commercial General Liability insurance policy with Royal Indemnity Company ("Royal"). (Doc. 31, Pretrial Order at 4.) The additional insured endorsement, which added Dillons as an insured, provides:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Additional Insured | Type of Service |
| --- | --- |
| DILLON STORES, A DIVISION OF DILLON COMPANIES, INC. | SECURITY OPERATIONS |

**WHO IS AN INSURED (Section II) is amended to include, as an additional insured, the person, organization, trustee or estate to whom the named insured is obligated by written contract to provide insurance such as that afforded by this policy, but only with respect to acts or omissions of the named insured arising out of the named insured's security or investigative operations or out of operations from the service noted in the Schedule on behalf of the said additional insured.**

**Nothing herein contained shall be held to waive, vary, alter or extend**

---

the men or their presence in the employee-only area, indicating that Stinson's testimony from the underlying trial, which is the basis for the factual assertion, does not unequivocally state that he did not first notify anyone of the two men. However, in the transcript, Stinson was asked "[w]hat did you do when you observed [the two men in the employee area]?" Stinson replied, "I proceeded to head towards them." While Stinson does not specifically state that he did not notify anyone before confronting the robbers, the only reasonable inference from his testimony is that he did not, especially considering Royal offers no contrary evidence despite having conducted discovery on the same matter in two separate lawsuits.

**any condition or provision of the—policy other than as above stated.**

(Doc. 35, ¶ 6.)

On April 20, 2001, Parker sued Dillons and PSI in Kansas state Court, alleging negligence on the part of both. (Doc. 35, ¶ 1.) Dillons tendered coverage for this suit to Royal on more than one occasion. (Doc. 53, ¶ 46–50.) On April 22, 2002, Royal, through Brownyard Claims Management, Inc. ("Brownyard"), its claims administrator, disclaimed coverage. (Doc. 35, ¶ 10.)

Dillons began settlement negotiations with Parker in September 2002, which culminated in a Settlement Agreement and Covenant Not to Execute signed on November 8, 2002. (Doc. 35, ¶ 14–15.) Pursuant to the agreement, Dillons confessed, and Parker accepted, judgment in the amount of $200,000 on November 14, 2002. (Doc. 35, ¶ 16.) Dillons made a payment of $100,000 to Parker in partial satisfaction of the judgment and assigned its rights with respect to the remaining $100,000 to Parker, and Parker agreed not to execute against Dillons for the remaining balance. (Doc. 43, Ex. 7.)

On December 5, 2002, the trial court in the underlying case granted summary judgment to PSI on Parker's claims against PSI on the basis that PSI owed no duty to Parker. (Doc. 35, ¶ 18.) The court reasoned that the MSLA between Dillons and PSI was not intended to protect patrons, and therefore, Parker was not an intended beneficiary to whom PSI owed a duty in tort. (Doc. 35, Ex. 4.) The judgment was affirmed by the Kansas Court of Appeals and review was denied by the Kansas Supreme Court. (Doc. 35, Ex. 5, 6.)

Parker and Dillons subsequently filed this action seeking indemnification for the consent judgment. (Doc. 35, Ex. 1.) Dillons seeks reimbursement for its $100,000 judgment payment to Parker and expenses and attorneys fees paid to defend the underlying action and to prosecute this action. (Doc. 35, Ex. 1 at MSJ 0017–18.) Parker seeks the $100,000 remaining unpaid on the judgment and expenses and attorneys fees accrued in the prosecution of this action. (Doc. 35, Ex. 1 at MSJ 0018.)

Royal contends that the additional insured clause of its policy limits Dillons' coverage to those losses Dillons suffers as a result of *vicarious* liability for PSI's *negligence.* Royal asserts that because PSI was "exonerated" by the state court in the underlying action, it has no contractual obligation to indemnify Dillons or Parker (whose rights are derivative of Dillons' right to indemnification). Royal further argues that the Settlement Agreement settled Parker's claims against Dillons for Dillons' own negligence in failing to provide reasonable security for its customers.

Plaintiffs contend that the additional insured endorsement covers Dillons' claim in the underlying suit. Plaintiffs argue that the settlement of the underlying case was reasonably made in good faith and is, therefore, binding upon Royal. Accordingly, Dillons and Parker, derivatively, are owed their respective amounts of the paid and unpaid portions of confessed judgment plus interest, and Royal is obligated to reimburse Dillons for it defense costs in the underlying suit, including attorney fees, costs, and expenses.

## DISCUSSION

Kansas law governs the substantive issues, specifically insurance contract interpretation, in this diversity suit, but federal law controls the summary judgment standard. *See Ring v. Lexington Apartments & Motor Inns–Oklahoma,* 3 Fed.Appx. 847, 849, 2001 WL 95144 (10th Cir.2001) ("When reviewing a diversity action, we look to state substantive law, but we follow federal law in determining the propriety of

the district court's grant of summary judgment.")

## A. Summary Judgment Standard

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). When reviewing the evidence, the Court must draw all reasonable inferences in favor of the nonmovant. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Under the standard set forth in Fed. R.Civ.P. 56(c), a "genuine issue for trial" exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if a dispute over that fact might affect the outcome of the suit under the governing substantive law. *Id.*

The nonmovant must bring forward more than a "mere scintilla" of evidence in support of its position. In essence, this Court must determine "whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

## B. Duty to Indemnify

The insuring agreement governs the scope of the duty to indemnify. Here, the relevant portion of the insuring agreement is the Additional Insured Endorsement, which provides that Dillons is an insured,

> but only with respect to acts or omissions of the named insured arising out of the named insured's security or investigative operations or out of operations from the service noted in the Schedule on behalf of the said additional insured.[2]

(Doc. 35, ¶ 5.) Stated another way, Dillons is only covered by the policy with respect to acts or omissions of PSI arising out of PSI's security operations for Dillons.

### 1. Insurance Contract Interpretation

▪ As previously noted, Kansas law governs the interpretation of the insuring agreement in this case. *See supra* at 1282–83. Where an insurance contract is unambiguous, the court must enforce the contract as made and not make another contract for the parties. *American Mercury Ins. Group v. Urban*, 2001 WL 1723734, *4–5 (D.Kan. May 23, 2001) (citing *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456, 459 (1992); *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659–60, 810 P.2d 283, 286 (1991)). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Farm Bureau*, 248 Kan. at 659, 810 P.2d at 285. A contract is ambiguous if it is capable of two or more reasonable interpretations under the applicable rules of construction. *Id.* at 659, 810 P.2d at 285–86.

▪ The construction of an insurance contract is a question of law. *American*

---

**2.** Defendant suggests that the Court should read "but only with respect to acts or omissions of the named insured arising" to modify both subclauses: "out of the named insured's security or investigative operations" and "out of operations from the service noted in the Schedule on behalf of the said additional insured." This is the most reasonable interpretation of the clause and the Court adopts it. However, the parties concede that PSI did not provide investigative operations to Dillons, thus the two subclauses are effectively redundant, both limiting coverage to acts or omissions arising out of "security operations."

*Mercury Ins.*, 2001 WL 1723734, at *4 (citations omitted). An insurance contract, like any other contract, should be construed so as to give effect to the parties' intent. *Id.* (citing *e.g. Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*, 768 F.Supp. 1463, 1467 (D.Kan.1991)). The test to be applied in determining the intention of the parties to an insurance policy is not what the insurer intended the policy to mean, but what a reasonable person in the position of the insured would understand it to mean. *Fancher v. Carson–Campbell, Inc.*, 216 Kan. 141, 145, 530 P.2d 1225, 1229 (1975).

▮ Because an insurer drafts its own contracts, it bears the responsibility of making the meaning clear, and any failure to do so will result in strict construction against the insurer. *Id.* at 145–146, 530 P.2d at 1229. Grants of coverage will be construed broadly and exclusions or limitations of coverage will be construed narrowly. *American Mercury Ins.*, 2001 WL 1723734, at *6 (interpreting Kansas law) (citations omitted). Any ambiguities will be construed in the way most favorable to the insured. *Fancher*, 216 Kan. at 146, 530 P.2d at 1229 (citing *Lavin v. State Farm Mutual Automobile Ins. Co.*, 193 Kan. 22, 28, 391 P.2d 992, 997 (1964); *Fowler v. United Equitable Ins. Co.*, 200 Kan. 632, 639, 438 P.2d 46, 52 (1968); *Blue v. Aetna Life Ins. Co.*, 208 Kan. 937, 940, 494 P.2d 1145, 1148 (1972)).

▮ The limiting clause of the additional insured endorsement is ambiguous because it is capable of two reasonable interpretations. A reasonable insured could understand the clause to limit coverage to situations where the additional insured (Dillons) is held vicariously liable for the negligence of the named insured (PSI), interpreting "acts or omissions" to mean negligent acts or omissions. *See Consolidation Coal Co., Inc. v. Liberty Mut. Ins. Co.*, 406 F.Supp. 1292, 1300 (W.D.Pa.1976) (finding that the parties intended "acts or omissions" in a substantially similar provision to mean "negligent acts or omissions," limiting coverage to vicarious liability). A reasonable person could also construe the additional insured endorsement to cover all acts or omissions, whether negligent or not, by a PSI employee arising out of PSI's security operations, interpreting "acts or omissions" according to their dictionary definitions. *See Md. Cas. Co. v. Regis Ins. Co.*, No. 96–1790, 1997 WL 164268, at *5 (E.D.Pa. April 9, 1997) (rejecting Defendants' argument that a substantially similar clause should be read to indemnify only for the additional insured's vicarious liability for the torts of the named insured).

Royal contends that relevant clause should be interpreted to limit coverage for Dillons to cases in which Dillons is held vicariously liable for the negligent acts or omissions of PSI. Royal argues that this interpretation would relieve it of liability because the state court held that PSI was not liable to Parker, and therefore Dillons could not be vicariously liable for PSI's acts or omissions, and vicarious liability could not have been the basis for Dillons' settlement with Parker.[3] Plaintiffs argue that the clause should be read to include liability arising out of any acts or omissions of PSI, whether negligent or not.

Royal relies on cases from other jurisdictions, and more particularly the case of *Consolidation Coal Co., Inc. v. Liberty*

---

**3.** Royal's reasoning assumes the state court judgment is binding upon this Court. Plaintiffs' argue that the state court is not binding because they did not have a full and fair opportunity to litigate the matter in state court, as their settlement with Parker occurred before the court's ruling. Because it is not determinative of the outcome, the Court does not reach the merits of this issue.

*Mut. Ins. Co.*, 406 F.Supp. 1292 (W.D.Pa. 1976).[4]

### 2. *Consolidation Coal*

In *Consolidation Coal*, the court, applying Pennsylvania law, interpreted an additional insured endorsement that provided coverage to the additional insured, "but only with respect to acts or omissions of the named insured in connection with the named insured's operations." *Id.* at 1296. The court construed the provision to mean that the additional insured was covered under the policy "only when the *negligent* acts or omissions of [the named insured] *directly caused* [the additional insured's] loss." *Id.* at 1299 (emphasis added). In so interpreting the agreement, the court essentially added "negligence" and "directly caused" to the language of the provision.

The court found the relevant provision to be ambiguous, but reasoned that if the intent of the parties could be ascertained, then the universal doctrine of construing insurance policy ambiguities against the insurer would not be invoked. *Id.* at 1295–96. The court, looking to the intent of the parties, interpreted the provision to limit coverage to vicarious liability for two reasons.

First, the court reasoned that a broader reading of the provision, allowing indemnification for a party's own negligence, would render the "but only with respect to the acts or omissions" portion of the provision mere surplusage. *Id.* at 1297–98. Thus, the intent of the parties must have

been to indemnify only for *negligent* acts and omissions of the named insured. *Id.*

Second, the court relied on two cases that interpreted the phrase "acts or omissions" in *indemnification contracts* to mean negligence. *Id.* at 1298 (citing *Kaspar v. Clinton–Jackson Corp.*, 118 Ill. App.2d 364, 254 N.E.2d 826 (1969); *Bankhead Welding Service, Inc. v. Fla. East Coast Ry. Co.*, 240 So.2d 648 (Fla. 3d DCA 1970)). The court recognized that *Kaspar* and *Bankhead* were decided under the indemnity contract rule that indemnity provisions should be strictly construed against providing indemnification for the indemnitee's own negligence. *Id.* at 1299. However, the court reasoned that such construction was appropriate because the insurance contract was based on, and required by, an indemnification provision in a separate contract. *Id.* at 1300.

While the relevant provision in *Consolidation Coal* is materially identical to one before this Court, this Court does not believe that Kansas insurance law would support the result or the reasoning in that case. Cases from the Tenth Circuit strongly suggest that both bases for *Consolidation Coal's* outcome would not apply in Kansas.

First, the *Consolidation Coal* court's assertion that a reading of the provision that allows indemnification for a party's own negligence would make the "but only with respect to acts or omissions" language surplusage, while persuasive, ignores the fact

---

4. Royal also relies on two other cases from sister federal district courts. *See Am. Guar. & Liab. Ins. Co. v. Liberty Mut. Fire Ins. Co.*, No. 88–86, 1988 WL 141533 (D.Md. Dec. 21, 1988) (holding that a similar additional insured endorsement limited coverage to vicarious liability); *Sun Co., Inc. v. Brown & Root Braun, Inc.*, No. 98–6504, 2001 WL 8864 (E.D.Pa. Jan 4, 2001) (same). These cases do not require separate discussion because *American Guarantee* relies on *Consolidation Coal*

and two indemnity cases, which are contrary to Tenth Circuit law. *See infra* 1284. Furthermore, *Sun Company* held, without substantial discussion, that a similar additional insured endorsement *clearly and unambiguously* limited coverage to vicarious liability for the acts or omissions of the named insured. The Court has already explained that the clause is ambiguous, based upon widely varying caselaw. *See supra* 1285–86.

that a narrow interpretation of the endorsement, limiting coverage to vicarious liability, renders the entire endorsement mere surplusage. The Tenth Circuit, interpreting Wyoming law, stated:

> Where the additional insured is held no more than vicariously liable for the acts of the named insured, the additional insured would have an action for indemnity against the primary wrongdoer. Thus, an endorsement that provides coverage only for the additional insured's vicarious liability may be illusory and provide no coverage at all. In this light, it is obvious that additional insureds expect more from an endorsement clause than mere protection from vicarious liability.

*Marathon Ashland Pipe Line LLC v. Md. Cas. Co.*, 243 F.3d 1232, n. 5 (10th Cir. 2001) (citations and quotations omitted). Thus, the general contract rule that each term should be read to have meaning, and not as mere surplusage, is inapposite here because it applies equally to either interpretation of the contract.

Furthermore, to find that "act and omissions" must mean *negligent* acts and omissions simply because to read it otherwise makes some language surplusage ignores the fact that the additional insured endorsement, under Defendant's own interpretation, contains obvious surplusage. *See supra* note 2.

Second, the *Consolidation Coal* court's reliance on indemnity cases and application of the indemnity rule that contracts of indemnity should be strictly construed against providing indemnification for an indemnitee's own negligence is not appropriate here. In a factually similar case, the Tenth Circuit, interpreting Kansas law, refused to rely on an indemnity case to interpret an additional insured endorsement, stating:

> The court [in the indemnity case] examined the language of a private contract

of indemnity ... rather than an insurance policy.... The court thus applied the general rule, also followed in Kansas, that private contracts of indemnity are to be strictly construed against the indemnitee. As we discuss above, however, Kansas courts apply precisely the opposite rule when construing insurance policies.

*McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251 n. 1 (10th Cir.1993) (citations omitted). The rules for interpreting contracts of indemnity and contracts of insurance often achieve opposite results. *Id.*, (citing *Pickhover v. Smith's Mgmt. Corp.*, 771 P.2d 664, 668, n. 3 (Utah Ct.App.1989)).

Third, unlike the court in *Consolidation Coal*, this Court will not look to the underlying service contract, the MSLA, to determine whether the parties intended to provide insurance coverage beyond vicarious liability. *See Marathon*, 243 F.3d at 1240 n. 5 (declining to consider an underlying service contract in determining whether the additional insured intended to have its own negligence covered by an endorsement); *see also Md. Cas. Co. v. Regis Ins. Co.*, 1997 WL 164268, at n. 1 (E.D.Pa. April 9, 1997) (declining to consider an underlying lease to determine an insurer's obligation to an additional insured). While the additional insured endorsement does refer to a "written contract", the endorsement makes no attempt to incorporate that contract or to define the scope of the coverage by specific reference to any provision in the underlying written contract. Therefore, the insurance policy, including the additional insured endorsement, must be construed according to its own terms. *Marathon*, 243 F.3d at 1240 n. 5.

### 3. Royal's Additional Insured Endorsement

As previously noted, the terms of the additional insured endorsement are ambig-

uous because the relevant provision is capable of at least two different interpretations. *See supra* at 1284. Therefore, this Court must construe the additional insured endorsement in the way most favorable to the insured, Dillons, according to a natural and reasonable interpretation of its terms.

Broken down into its component parts, the relevant provision consists of four key phrases: "but only with respect to," "acts or omissions of [PSI]," "arising out of," and "[PSI]'s security or investigative operations." The Court will consider each phrase separately.

### a. "but only with respect to"

This term is not analyzed in any Kansas case. However, other courts have considered this language in the context of an additional insured endorsement. Recently, the California Court of Appeals thoroughly analyzed the available caselaw, determining that " 'only with respect to' " merely indicates some relationship, *Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 2 Cal.Rptr.3d 18, 25, 110 Cal.App.4th 710, 719 (2003). A federal court in the Eastern District of Pennsylvania, interpreting Pennsylvania law, suggested that this phrase did not limit coverage at all. *See Md. Cas. Co. v. Regis Ins. Co.*, 1997 WL 164268, *5 n. 5 (E.D.Pa. April 9, 1997) (disregarding insurer's argument that "but only with respect to" limited coverage); *but cf. Consolidation Coal*, 406 F.Supp. at 1299 (stating that "but only with respect to" was an attempt by the insurer to "qualify the extent to which the insured was an additional insured under the policy").

This court finds the California court's analysis more persuasive. It was the only court to extensively analyze the particular phrase, focusing, as Kansas law requires, on the plain and usual meaning of the terms. *See Hartford*, 2 Cal.Rptr.3d at 25, 110 Cal.App.4th at 719–20 (defining the terms according to Webster's and Oxford dictionaries). "But only with respect to" reasonably interpreted in favor of the insured requires only that conjoined matters bear "some relationship" to each other.

### b. "acts or omissions of PSI"

Royal argues that the addition of the phrase "acts or omissions" is the key language that limits coverage to Dillons' vicarious liability for PSI's negligence. Royal claims that this language distinguishes its additional insured clause from the other clauses, such as the one considered by the Tenth Circuit in *McIntosh*, that limit coverage to "liability arising out of operations performed [by the named insured.]" *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 254 (10th Cir.1993) (interpreting Kansas law); *see also Marathon Ashland Pipe Line LLC v. Md. Cas. Co.*, 243 F.3d 1232, 1237 (10th Cir.2001) (interpreting a similar provision under Wyoming law).

In *McIntosh*, the Tenth Circuit rejected the insurance company's argument that "the additional insured endorsement does not limit the policy's coverage to cases where [the additional insured] is held vicariously liable for [the named insured's negligence]." *McIntosh*, 992 F.2d at 254; *see also Ashland*, 243 F.3d at 1240 (rejecting the same argument).

As stated above, Royal cites *Consolidation Coal* for the proposition that "acts or omissions" means *negligent* acts or omissions. The Court already rejected the reasoning in *Consolidation Coal* as inconsistent with the Tenth Circuit's interpretation of Kansas law, *See supra* Part B.2, and Royal does not provide any additional rationale for upholding its result.

On the other hand, the Court is highly skeptical about whether Royal's additional insured endorsement, although containing the additional "acts or omissions" lan-

guage, is materially different in scope from the *McIntosh* and *Ashland* endorsements. Furthermore, if Royal intended to limit coverage to Dillons' vicarious liability for negligent acts of PSI, it certainly could have used the words "vicarious" and "negligent" to modify the broad terms "liability" and "acts or omissions," making its intent clear. Since the *Consolidation Coal* opinion was published in 1976, Royal has had ample time to recognize the potential ambiguity of its clause and adjust the language accordingly.

Even if Royal's endorsement varies somewhat from the *McIntosh* and *Ashland* endorsements, the Court finds that a reasonable insured could understand "acts or omissions" to mean all acts or omissions, negligent or not. In *Regis,* a federal court in the Eastern District of Pennsylvania held that "[t]he plain or ordinary meaning of 'act or omission' only requires the named insured to do or fail to do something." *Md. Cas. Co. v. Regis Ins. Co.,* No. 96–1790, 1997 WL 164268, at *5 (E.D.Pa. April 9, 1997) (criticizing *Consolidation Coal's* rationale but factually distinguishing its case). Negligence requires that a person do (or fail to do) something *that a reasonable person* would (or would not) do. *Id.* (citing Black's Law Dictionary, 4th ed. at 1184) (quotations omitted).

*Regis'* interpretation of "acts or omissions" is reasonable and more favorable to the Dillons than the interpretation by *Consolidation Coal.* Therefore, the court concludes that the phrase "acts and omissions of PSI" includes any act or failure to act by Stinson, PSI's employee.

### c. "arising out of"

 Kansas law provides substantial guidance regarding the phrase "arising out of" in the context of insurance contracts. The phrase clearly relates to causation, but its limits are "broad and vague." *McIntosh v. Scottsdale Ins. Co.,* 992 F.2d 251, 255 (10th Cir.1993). "Kansas courts have held that this ambiguous phrase 'imparts a more liberal concept ... than proximate cause.'" *Id.* (citing *Pestock v. State Farm Auto. Ins. Co.,* 9 Kan.App.2d 188, 189, 674 P.2d 1062, 1063 (1984)) (citing *Farm Bureau Mut. Ins. Co., Inc. v. Evans,* 7 Kan.App.2d 60, 63, 637 P.2d 491, 494 (1981)). However, something more than a remote connection is required. *See Evans,* 7 Kan.App.2d at 63–64, 637 P.2d at 494 (interpreting an automobile insurance policy). This concept is broad and inclusive. *See Garrison v. State Farm Mut. Auto. Ins. Co.,* 258 Kan. 547, 554, 907 P.2d 891, 896 (1995) (holding that an injury sustained while removing a gun from a vehicle was covered by an insurance policy as arising out of the use of the vehicle), *but cf. Evans,* 7 Kan.App.2d at 63–64, 637 P.2d at 494 (holding that throwing firecrackers out of the back of a parked station wagon was too remote of a connection between the "use" of the car and the injury). Accordingly, the court concludes that "arising out of" as used in the additional insured endorsement only requires some connection between acts or omissions of PSI and PSI's security or investigative operations for Dillons.

### d. "PSI's security or investigative operations"

 Royal argues that the scope of PSI's security and investigative operations is delineated in the MSLA and the JSO's, and these have been interpreted by the state court to exclude any operations that were intended to benefit or protect customers of Dillons such as Plaintiff Parker. As previously noted, however, because neither the MSLA nor the JSO's were specifically incorporated into the insurance policy by reference, the Court is reluctant to look to those outside documents to determine the meaning of PSI's security or investiga-

tive operations.[5] Instead, the court will look to the usual and accepted definitions of the words used in the additional insured endorsement—"Security Operations." Black's Law Dictionary defines "security" as "the state of being secure, especially from danger or attack." Black's Law Dictionary 1358 (7th ed.1999). Webster's Dictionary defines "operations" as "a doing or performing of a practical work." Webster's Third New Int'l Dictionary, 1581 (1986). The Court finds that "security operations" include all of PSI's work to secure Dillons from danger or attack.

### 4. Dillons' Claim

■ Considering each of the above phrases together, Dillons is an additional insured under the policy if Dillons' claim (1) bears some relationship, (2) to Stinson's act or failure to act, (3) which is somehow causally connected (4) to PSI's work to secure Dillons from danger or attack.

At a minimum, Stinson failed to perform his duty to secure Dillons by failing to keep Dillons employees advised of suspicious people or activities, specifically his failure to inform anyone of the robbers in the employee-only area before approaching them. Thus, Stinson's failure to act was directly related to PSI's contractual obligations to Dillons concerning PSI's security operations. The fact that PSI has been found by the state court to not owe a specific duty to Plaintiff Parker as a customer is not determinative of whether Dillons is an additional insured under the policy.

The only remaining question is whether Stinson's failure to notify anyone of the robbers in the employee only area bears some relationship to Dillons' claim. The answer is clearly yes. The uncontroverted

evidence shows that Stinson's failure to notify anyone of the robbers before being captured resulted in a robbery that lasted at least thirty minutes, and that if the police had been notified at the beginning of the robbery, the police would have responded before Parker ever entered the store, preventing any injury to Parker. Lest any pessimists claim that the response time of the Wichita Police Department would not have been adequate (*i.e.*, beyond 30 minutes), the uncontroverted evidence reflects that the Police had already arrived when Stinson was making his first 911 call shortly after the robbers left. While the record does not reflect who initially notified the police or when, it is not challenged that the call was placed well after the beginning of the robbery.

Dillons' claim for damages relating to Parker's injuries are covered by the Royal insurance policy under the additional insured endorsement. Because there are no material factual disputes, Dillons and Parker, whose rights are derivative of Dillons, are entitled to summary judgment on the issue of indemnification.

### C. Duty to Defend

■ Royal claims that the issue of duty to defend turns upon the determination of the duty to indemnify, under the "ultimate showing test." *See* Doc. at 32–33 (citing *S. Central Kan. Health Ins. Group v. Harden & Co. Ins. Servs., Inc.*, 278 Kan. 347, 97 P.3d 1031 (2004)); *see also American Mercury Ins. Group v. Urban*, 2001 WL 1723734, at *14 (D.Kan. May 23, 2001) ("The determination of whether there is a duty to defend ultimately depends upon whether coverage exists under an insurance policy."). The Court does not decide

---

5. · If the court were to look to the underlying contractual documents to ascertain the meaning of the phrase "security operations," the JSO's specifically required Stinson to keep store employees advised of strange or suspicious people or activities. Thus any interpretation of the scope of PSI's security operations would include this activity.

whether the ultimate showing test or prospective test applies to this case under Kansas law because even under the narrower ultimate showing test, Royal breached its duty to defend Dillons in the underlying state court case. The court has found that Royal has a duty to indemnify Dillons. Therefore, it also had a duty to defend Dillons in the underlying action, and Dillons is entitled to recover reasonable attorney fees expended in defending the underlying action.[6]

### D. Dillons–Parker Settlement Agreement

■■■ Royal concedes that the settlement between Dillons and Parker was reasonably made and reasonable in amount. (Doc. 53 ¶ 88.) However, Royal contends that it is not bound by the settlement because Dillons violated the cooperation clause of the insuring agreement by failing to re-tender the case for defense coverage prior to settling. There is no dispute that Dillons previously tendered the suit for coverage on two separate occasions, but Royal asserts re-tender was necessary under the provision after entry of the pretrial order, which raised "new" claims. This argument is not persuasive.

■■■ "The purpose of cooperation clauses is to protect the insurer's interest and prevent collusion between the insured and the injured person." *Watson v. Jones,* 227 Kan. 862, 866–67, 610 P.2d 619, 624 (1980). They should be interpreted according to the common and ordinary meanings of their terms, and not to a strained or technical construction. *Id.* Even if an insured breaches the duty to notify, the insurer must still show that its ability to defend has been prejudiced in

order to escape liability. *Creek v. Harder Constr., Inc.,* 25 Kan.App.2d 232, 236–37, 961 P.2d 1240, 1244 (1998).

The relevant portion of the insuring agreement required insureds to "[n]otify [the insurer] as soon as practicable" and to "see to it that we receive written notice of the claim or 'suit' as soon as practicable." (Doc. 31, Pretrial Order at 45.) Dillons complied with the provision. Prior to settling with Parker, Dillons provided notice to Royal by repeatedly tendering its claim for defense and Royal disclaimed coverage. While the court recognizes that the "claims" in the Pretrial Order may not be identical to those in the original Petition, re-tender was not necessary because (1) covered claims were included in both documents, and (2) Royal failed to identify, and the Court is unable to ascertain, any material differences in claims between the Petition and Pretrial Order.

Furthermore, even if Dillons breached the notice provision, Royal has not met its burden to show that it was prejudiced by the settlement. Royal admitted that it was reasonable to settle and that the settlement amount was reasonable. Royal has not shown any evidence that indicates that it would have settled for less or incurred less liability at trial, if Dillons had re-tendered the suit. Most importantly, Royal has not shown or even stated that it would have accepted tender if Dillon's had re-tendered after entry of the Pretrial Order. To the contrary, Royal, which was well aware of the contents of the Pretrial Order because it was actively providing a defense for PSI, could have asserted its right to defend Dillons at any time, but it elected not to do so.

---

6. Although Plaintiffs' Complaint seeks attorney fees for prosecuting this action pursuant to K.S.A. § 40–256, Plaintiffs' Cross Motion for Summary Judgment does not request relief on that claim. Therefore, the Court does

not decide that matter in this Order. The court does have a serious question, however, whether Royal's refusal to pay was "without just cause or excuse," but it leaves that issue open for future resolution.

The court finds that the settlement agreement between Dillons and Parker in the underlying action was reasonable and is binding upon Royal.

### E. Documents Reviewed *In Camera*

 The Court reviewed redacted or excluded portions of Brownyard's claim file, David Buchanon's coverage opinion letter, and Brownyard's computer claims file. The Court finds that, by and large, the redacted and excluded portions of these documents are privileged or protected work product. A few of the computer claims file redactions are not privileged or protected, *i.e.*, the amount of reserve set aside for the defense of this action, etc., but the Court finds that these items are not relevant or reasonably calculated to lead to admissible evidence, especially in light of the Court's rulings above. Thus, the documents reviewed *in camera* are not discoverable and Plaintiffs' Motion to Compel is DENIED.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 44) is GRANTED, and Defendant's Motion for Partial Summary Judgment (Doc. 34) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel (Doc. 38) is DENIED.

**IT IS FURTHER ORDERED** that the parties meet and confer concerning a Journal Entry of Judgment which will formalize and quantify the judgment due to Dillons and Parker as a result of this Memorandum and Order. The court in this Memorandum and Order is not ruling on whether Plaintiffs are entitled to pre-judgment interest or, if so, what may be the appropriate interest rate to calculate such prejudgment interest. If the parties are unable to reach agreement on these issues, they shall submit separate briefs outlining their respective positions on those issues not later than **May 2, 2005.**

The briefs shall not exceed ten (10) pages in length.

**IT IS FURTHER ORDERED** that the parties meet and confer concerning Plaintiffs' claim for attorneys fees for the prosecution of this case pursuant to K.S.A. 40–256. If the parties are unable to agree on this issue, not later than **May 2, 2005,** the parties shall submit separate briefs outlining their respective positions and advising whether a hearing will be required to resolve this attorneys fee issue.